# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

CHERYL L. JOHNSON, )
)
        Plaintiff, )
)
v. ) Case No. CIV-09-255-RAW
)
MICHAEL J. ASTRUE, )
Commissioner of Social )
Security Administration, )
)
        Defendant. )

## REPORT AND RECOMMENDATION

Plaintiff Cheryl L. Johnson (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be REVERSED and REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ."

42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally*, Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

2

two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on July 1, 1962 and was 46 years old at the time of the ALJ's decision. Claimant completed her education through the eleventh grade. Claimant worked in the past as a cashier. Claimant alleges an inability to work beginning August

3

14, 2006, due to diabetes mellitus with neuropathy, degenerative disc disease of the lumbar spine post surgery, pain, side effects from medications, diminished eyesight, carpal tunnel syndrome, and migraine headaches.

**Procedural History**

On August 18, 2006, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*). Claimant's application was denied initially and upon reconsideration. On November 7, 2008, an administrative hearing was held before ALJ Lantz McClains in Sallisaw, Oklahoma. On January 29, 2009, the ALJ issued an unfavorable decision on Claimant's applications. On June 10, 2009, the Appeals Council denied review of the ALJ's decision. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, she did not meet a listing and retained the residual functional capacity ("RFC") to perform a full range of sedentary work.

**Errors Alleged for Review**

Claimant asserts the ALJ committed error in: (1) improperly discounting the treating physician's Attending Physician's Statement; (2) providing an incomplete RFC; (3) failing to find Claimant's carpal tunnel syndrome to be a severe impairment; (4) engaging in a faulty credibility analysis; and (5) failing to discuss the affects of Claimant's obesity.

**Treating Physician's Statement**

Claimant asserts the ALJ erroneously failed to consider the statement of his treating physician. On June 5, 2000, Claimant was evaluated by Dr. J. Michael Stadefer. He diagnosed her with L1-2 disc protrusion with attendant focal canal stenosis, facet arthropathy, and clear-cut foraminal stenosis on the left side. (Tr. 350). On December 22, 2000, Claimant underwent surgery with a fusion from T-11 through L-3. (Tr. 324).

In September of 2005, Claimant came under the care of Dr. Csaba Kiss. Dr. Kiss diagnosed Claimant with diabetes mellitus, type II, chest pain syndrome, hypertension, hyperlipidemia, GERD, and chronic sinusitis. (Tr. 194). In November of 2005, Claimant was diagnosed by Dr. Kiss with carpal tunnel syndrome, depression, fluid retention, and asthma attachs. In September of 2006, Dr. Kiss diagnosed Claimant with diabetes mellitus, type II,

5

hypertension, asthma, chronic low back pain, secondary to degenerative joint and disc disease and spinal stenosis, dyslipidemia, and depression. (Tr. 190).

Thereafter, Dr. Christina Jefferson became Claimant's primary care physician beginning on October 26, 2006. Dr. Jefferson completed an Attending Physician's Statement on Claimant which is undated. (Tr. 361). Dr. Jefferson writes on the statement that Claimant would need to take unscheduled breaks in an 8 hour workday; would experience "good days" and "bad days"; would be absent from work more than four days per month; is not capable of working 8 hours per day and a 40 hour work week; is not expected to make a fundamental or marked change for the better in the future; cannot use her feed for repetitive movements such as for foot controls; cannot use her hands for repetitive actions, simple grasping, pushing and pulling, and fine manipulation. She added a comment "dropping things." (Tr. 361).

Claimant was also evaluated by Dr. Ronald Schatzman on December 19, 2006. He diagnosed Claimant with diabetes mellitus, low back pain stat6us post surgery with hardware placed still with pain and limited movements, ponderous and careful gait such that she would benefit from a walking aid, no sensation in stocking distribution up to her knees, arrhythmia by history, and obesity.

6

(Tr. 210).

On May 21, 2008, Claimant was evaluated by Dr. Arthur Johnson complaining of upper and lower back pain. Dr. Johnson diagnosed Claimant with lumbago, radiculopathy, degenerative disease of the lumbar spine, and post surgical changes. He prescribed physical therapy and medication for her condition. (Tr. 324).

On January 3, 2007, Claimant underwent a consultative examination by Dr. Carmen Bird. Dr. Bird restricted Claimant to occasionally lifting/carrying 10 pounds; frequently lifting/carrying less than 10 pounds; standing and/or walking 2 hours in an 8 hour workday; sitting for 6 hours in an 8 hour workday; and unlimited pushing/pulling. (Tr. 216). Dr. Bird placed no other restriction upon Claimant.

A Psychiatric Review Technique form was completed on Claimant by Dr. Laura Lochner on April 13, 2007. Dr. Lochner found Claimant suffered from the non-severe conditions of Affective Disorders and Anxiety-Related Disorders. (Tr. 223). She determined that Claimant had mild limitations on her activities of daily living; maintaining social functioning; and maintaining concentration, persistence, or pace. (Tr. 233).

Dr. Lochner found Claimant's depression and anxiety did not impair her ability to function. Her I.Q. was estimated as average

at 90 or higher. (Tr. 235).

In his decision, the ALJ determined Claimant suffered from the severe impairments of diabetes mellitus with neuropathy and degenerative disc disease of the lumbar spine status post surgery. (Tr. 12). In his RFC evaluation, the ALJ determined Claimant retained the capacity to perform a full range of sedentary work without the constant use of the hands for such repetitive tasks as keyboarding. (Tr. 14).

With specific regard to Dr. Jefferson's statement, the ALJ determined that her opinions cannot be given controlling weight because "they are inconsistent with the record as a whole and do not appear to take account of the fact that the claimant appears to exaggerate her symptoms. . . ." He concludes that Dr. Jefferson's opinions are "less persuasive." (Tr. 21).

Clearly, Dr. Jefferson occupies the status of a treating physician. In deciding how much weight to give the opinion of a treating physician, an ALJ must first determine whether the opinion is entitled to "controlling weight." Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003). An ALJ is required to give the opinion of a treating physician controlling weight if it is both: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) "consistent with other substantial

8

evidence in the record." Id. (quotation omitted). "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." Id.

Even if a treating physician's opinion is not entitled to controlling weight, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." Id. (quotation omitted). The factors reference in that section are: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. Id. at 1300-01 (quotation omitted). After considering these factors, the ALJ must "give good reasons" for the weight he ultimately assigns the opinion. 20 C.F.R. § 404.1527(d)(2); Robinson v. Barnhart, 366 F.3d 1078, 1082 (10th Cir. 2004)(citations omitted). Any such findings must be "sufficiently specific to make clear to any subsequent reviewers

the weight the adjudicator gave to the treating source's medical opinions and the reason for that weight." Id. "Finally, if the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so." Watkins, 350 F.3d at 1301 (quotations omitted).

The ALJ first rejected Dr. Jefferson's opinion because it was contrary to other evidence in the record. Dr. Jefferson's statements regarding Claimant's condition are supported by the records of Dr. Kiss and Dr. Schatzman. The ALJ also states that Dr. Jefferson did not take into account the fact that Claimant exaggerated her conditions. The ALJ has no basis for making this statement in the objective medical record. The ALJ cites to an example of exaggeration in that she claimed incontinence in her testimony when no record of such a condition exists. The ALJ apparently did not consider the records of Dr. Johnson which references the condition. (Tr. 323).

Moreover, the ALJ makes several statements concerning the "possible" motive for a doctor's opinion, such as an effort to assist a patient with whom he or she sympathizes for one reason or another as well as pressure by an insistent patient. This type of unsubstantiated justification for rejecting a treating physician's opinion equates with the universally rejected basis of a

physician's attempt to accommodate a patient. <u>Miller v. Chater</u>, 99 F.3d. 972, 976 (10th Cir. 1996) citing <u>Frey v. Bowen</u>, 816 F.2d 508, 515 (10th Cir. 1987). On remand, the ALJ shall make an appropriate evaluation of the basis for not affording the opinion rendered by the treating physician, Dr. Jefferson without reliance upon an improper basis.

### RFC Evaluation

Claimant next contends the RFC assessment made by the ALJ does not take into consideration several of the limitations set forth by Dr. Jefferson. Since the ALJ must re-evaluate the weight Dr. Jefferson's opinions are to be afforded, he must also reconsider his RFC evaluation on remand.

### Other Impairments

Claimant states that the ALJ failed to consider other impairments such as carpal tunnel. Little medical evidence in the record supports the position taken by Claimant as to the extent of her carpal tunnel restrictions such that this Court can conclude her condition constitutes a severe impairment. A notation in Dr. Kiss' records does indicate she should follow up with Dr. Kelly on her condition. (Tr. 192). Whether other records exist on this issue is not known. If Claimant's counsel should find further records, he should be permitted to supplement the record to include

11

any follow up care and treatment of Claimant's carpal tunnel syndrome.

### Credibility Analysis

Claimant asserts the ALJ failed to engage in a proper credibility analysis. This Court need go no further than the aforementioned statement by Claimant labeled by the ALJ as exaggeration concerning her incontinence. It is well-established that "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). "Credibility determinations are peculiarly in the province of the finder of fact" and, as such, will not be disturbed when supported by substantial evidence. Id. The ALJ's credibility determination is not supported by substantial evidence and shall be re-evaluated on remand.

### Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **REVERSED and the matter REMANDED** for further proceedings consistent with this Order. The parties

are herewith given fourteen (14) days from the date of the service of these Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 24th day of August, 2010.

KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE